**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
FT. MYERS DIVISION**

GRATUITY SOLUTIONS, LLC and
GRATUITY, LLC

        Plaintiffs,

      v.

TOAST, INC.

        Defendant.

Case No.: 2:24-cv-00737-JLB-NPM

**PUBLIC REDACTED VERSION**

**DEFENDANT'S OPPOSITION TO PLAINTIFFS'
MOTION FOR A PRELIMINARY INJUNCTION**

**INTRODUCTION**

Plaintiffs Gratuity Solutions, LLC and Gratuity, LLC's (collectively, "GS") filed this suit to create leverage in settlement negotiations to resolve a case between these parties that has been pending in Massachusetts for two years. *See* Sept. 4, 2024 Hr'g Tr. at 14:25–15:5 (GS admitting that it filed this case because its "negotiating position was pretty weak" after the Massachusetts case became stayed). Unsurprisingly, GS's complaint and Motion for a Preliminary Injunction ("Motion") (D.I. 57) filed here reference *no direct evidence* to support their claims. Instead, GS alleges that Defendant Toast, Inc. ("Toast") misappropriated trade secrets based only on speculation. Each time this Court or Toast proved the baselessness in their claims, GS responded not by presenting actual evidence, but by abandoning its position and introducing a new, equally unsupported position. For example, after Toast demonstrated during TRO proceedings that *every* then-alleged GS trade secret was in the public domain, GS surrendered on *every* position and now identifies a new set of nondescript features of Toast's gratuity management software, Toast Tips Manager, that GS contends are GS's trade secrets. But even these new "trade secrets" are in the public domain, and many *have been for over a decade*.

Against this backdrop, GS now asks this Court to effectively ▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮. GS does not cite a single case where a court granted the relief sought on such weak evidence. Nor could it because GS cannot satisfy its burden of persuasion on

even one of the four factors required to obtain the "extraordinary and drastic remedy" of injunctive relief. *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000).

**No likelihood of success on the merits.** GS claims, without any evidence, that Toast misappropriated the "trade secrets" in Exhibit 29 to the Second Amended Complaint—i.e., certain ways of allocating tips—after allegedly learning about them from a member of Toast's Customer Advisory Board ("CAB"), Joy Zarembka. First, GS presented no evidence that GS even possesses such trade secrets or that it derives value from the alleged trade secrets. For example, GS has not presented any evidence that it is using these trade secrets in its own PayDayPortal software. Second, even assuming that the alleged trade secrets are used in PayDayPortal, the features of a commercially-available product apparent to anyone with a login and password are not trade secrets or subject to the reasonable protective measures necessary to maintain secrecy. Third, for at least the reasons set forth in the witness declarations submitted herewith, GS's unsubstantiated misappropriation allegations are demonstrably false.

███████████████████████████████████████████████

███████████████████████████████████████████████

**No irreparable harm to GS.** GS argues it is irreparably harmed based on the speculative, unsubstantiated claim of "an existential threat" to GS's business. To the extent GS is referring to the loss of customers to Toast, it has presented no evidence that it has lost customers to Toast or any evidence connecting the loss of customers to the alleged trade secret misappropriation. Regardless, any harm to GS is compensable by the money damages GS seeks in their complaint. Moreover, GS knew of Toast's

Tips Manager product since at least when GS first sued Toast in September 2022. But it did not seek injunctive relief until nearly two years later. GS's delay undermines any claim of irreparable harm.

**Any injury to GS does not outweigh the harm to Toast.**



**No public interest in an injunction.** There is no public interest in stifling free and fair competition in the marketplace. And in any event, the requested injunction would cause significant harm to

GS's request also fails because the relief it seeks is overbroad. GS requests an injunction "to prevent Defendant from further use, dissemination, and publication of Plaintiffs' trade secrets," "to discontinue any dissemination of such trade secrets to its customers or others, and to cease its unauthorized access or use of Gratuity's trade secrets, whether in its Toast Tips product *or otherwise*." Motion at 1, 12–13 (emphasis added). But that is precisely what the Eleventh Circuit has held an injunction *cannot* do, which is generally prohibit a defendant from "infringing on plaintiff's … trade

secrets." *John H. Harland Co. v. Clarke Checks, Inc.*, 711 F.2d 966, 985 (11th Cir. 1983).

If the Court orders an injunction, then a significant bond should be posted.

For all these reasons, the Court should deny GS's Motion, and because this is GS's second motion seeking injunctive relief, the Court should do so *with prejudice*.

## BACKGROUND

### I.    Toast Built Tips Manager Without Any GS Confidential Information

Toast is a Massachusetts-based company that sells restaurant management products and services throughout the United States. SAC ¶4. One of Toast's software products is Toast Tips Manager, which allows restaurants to allocate tips among restaurant employees. SAC ¶25. GS provides a gratuity allocation software called PayDayPortal. SAC ¶¶2–3, ¶26.

4

[REDACTED]

## II. There is No Evidence that Any Member of Toast's Customer Advisory Board Has Given GS Trade Secrets to Toast

GS alleges that Toast obtained and then misappropriated GS's trade secrets from a member of Toast's CAB. Motion at 5–8. The CAB is a group of roughly 20 small business restauranteurs. Declaration of Katherine Kerr in Support of Defendant's Opposition to Plaintiffs' Motion for a Preliminary Injunction ("Kerr Decl.") ¶5. [REDACTED]

[REDACTED]

5

Joy Zarembka has been a member of the Toast CAB since 2021.  Kerr Decl.

¶12.



### III.    GS Sued Toast in Massachusetts For Patent Infringement and Breach of Contract Related to Development of Toast Tips Manager

GS sued Toast in the District of Massachusetts on September 19, 2022 alleging that Toast Tips Manager infringes two patents and that Toast breached its contractual obligations arising from the NDAs allegedly executed in 2016 and 2019.  *Gratuity Solutions, LLC et al. v. Toast, Inc.*, No. 1:22-cv-11539, D.I. 1 (D. Mass.) ("D. Mass. Complaint").  The asserted patents are titled "System and Method for Managing Gratuities."  *Id.* ¶12.  According to GS, the claimed inventions "enhance the

performance of tipped-employee business computer systems by enabling them to aggregate and compile tipped transaction and employee performance data and automatically apply pre-defined distribution rules." *Id*. ¶16.

Toast moved to dismiss GS's patent claims because the asserted patents did not claim patentable subject matter. Toast also moved to dismiss GS's claim for breach of contract for failure to state a claim. *Gratuity Solutions, LLC et al. v. Toast, Inc.*, No. 1:22-cv-11539, D.I. 14. On June 7, 2023, the Massachusetts court granted the motion to dismiss as to one asserted patent, but denied the motion as to the second patent and the breach of contract claim. *Id*. at D.I. 48.

Fact discovery began around July 12, 2023. *Id*. at A 58. Toast was required to serve "Technical Documents" "sufficient to show the composition, operation, construction, and performance of the accused components, elements, or functionality identified in the patentees' infringement claim charts." Reddy Decl., Ex. A at L.R. 16.6(d)(4)(A). Toast's production of such documents, served on October 24, 2023 (Reddy Decl., Ex. B), included Toast's then-existing websites regarding Toast Tips Manager, Reddy Decl. ¶5, the very same websites which GS now claims represent GS's trade secrets. Ex. 19-1; Ex. 19-2; Ex. 51-1. Following this production, GS did not claim trade secret misappropriation in the D. Mass Complaint, or seek an injunction with the Massachusetts court to have the websites taken down.

**IV.** **GS Now Sues Toast in Florida for Trade Secret Misappropriation Over the Same Conduct Forming its Breach of Contract Case in Massachusetts**

GS sued Toast in this District on August 14, 2024. *Gratuity Solutions, LLC et al.*

*v. Toast, Inc.*, No. 2:24-cv-00737 (M.D. Fla.), D.I. 1, rebranding its patent and contract claims as trade secret misappropriation claims. For example, the now operative complaint alleges that "certain of Toast's officers, directors, and/or members of its Customer Advisory Board(s)" have "obtained access to Plaintiffs' trade secrets and other confidential information pursuant to confidentiality agreements," and subsequently used those "protected trade secrets and other confidential information" to develop "its own competing systems" for gratuity management, Toast Tips Manager. SAC ¶1.

Exhibit 29 to the SAC is GS's latest attempt to articulate trade secrets that Toast allegedly stole. But GS merely points to mundane how-to videos and articles regarding calculating tips, and GS claims generally that the posted content constitutes trade secrets used by GS. Ex. 51-1, at 1 ("The following screenshots from the Web Pages of the TOAST Main Help Center website, correlate to the corresponding Gratuity Solutions' trade secret feature functionality and implementation details that allow Gratuity Solutions' customers to tailor, streamline, and maximize the benefits of Gratuity Solutions' platform."). In total, GS identifies 16 "features" of Toast's Tips Manager that GS says were available to its customers beginning in 2014. The list includes basic features like certain labels and job titles (Ex. 51-1, at 1, 3–4), ways to do math (*Id.* at 7), and 40-minutes of a video on tip-pooling policies (*Id.* at 15).

## ARGUMENT

### I.  Every Factor Weighs Against Entry of a Preliminary Injunction

A preliminary injunction is an "extraordinary and drastic remedy" that courts in the Eleventh Circuit will grant "only if the moving party shows that: (1) it has a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest." *Siegel*, 234 F.3d at 1176.  A movant must "clearly establish[]" all four requirements.  *Id.*  GS cannot "clearly establish" any of the required elements.

### A. GS Fails to Establish a Likelihood of Success on the Merits

To prove trade secret misappropriation under the DTSA or FUTSA, GS must prove that: (1) it possessed a "trade secret"; (2) it "took reasonable measures" to protect it; and (3) Toast "used or disclosed the trade secret despite a duty to maintain secrecy." *ProV Int'l Inc. v. Lucca*, 2019 WL 5578880, at *2 (M.D. Fla. Oct. 29, 2019).  GS has not established a substantial likelihood of proving any of these elements.

### i.  GS Has No Protectable Trade Secrets

GS's latest (now third different) list of alleged trade secrets in Exhibit 29 still fails to identify any information that falls under the statutory definition of a trade secret.  GS points to Toast how-to videos and features and functionality of its Toast Tips Manager product and says, without explanation, that the content—mundane product features of calculating, pooling and distributing tips—constitute trade secrets.

GS does not explain where in PayDayPortal its "trade secrets" appear, or how they "derive[] independent economic value" from being secret. *See* 18 U.S.C. § 1839(3)(B); *Am. Red Cross v. Palm Beach Blood Bank, Inc.*, 143 F.3d 1407, 1410 (11th Cir. 1998) (applying Florida law). Instead GS just points to features of Toast Tips Manager and claims that it owns them. GS's general assertions that large swaths of information about Toast's Tips Manager product constitutes GS's trade secrets lack the particularity required for an injunction to enter. *See, e.g.*, *Citcon USA, LLC v. RiverPay Inc.*, 2019 WL 2603219, at *1–2 (N.D. Cal. June 25, 2019) (denying injunction where "source code" was not defined with sufficient particularity); *c.f. FTC v. Alcoholism Cure Corp.*, 2010 WL 4840046, *3 (M.D. Fla. Nov. 23, 2010) (holding Defendant failed to prove that information is trade secret, reasoning that "simply characterizing a document as a 'trade secret,' without more, does not make it so").

Assuming *arguendo* that the alleged trade secrets are in GS's PayDayPortal software and that GS derives economic value from such features not being generally known, GS cannot claim trade secret protection over features of its commercially-available product that are apparent to anyone with a login and password. *See, e.g.*, *Warehouse Sols., Inc. v. Integrated Logistics, LLC*, 610 F. App'x 881, 885–86 (11th Cir. 2015) (affirming summary judgment and denying trade secret protection to a software "program's 'features and functions'" after noting that how the program "looked and worked was readily apparent to authorized users with an ID and password").

By definition a trade secret must not be "generally known to" or "readily ascertainable through proper means by, another person." 18 U.S.C. § 1839(3)(B). But

the features and functionality of PayDayPortal *are* "generally known" and "readily ascertainable through proper means"—indeed they are apparent to all of GS's users. As Judge Easterbrook noted in *IDX Sys. Corp.*: "a trade-secret claim based on readily observable material is a bust." *IDX Sys. Corp. v. Epic Sys. Corp.*, 285 F.3d 581, 584 (7th Cir. 2002) (affirming dismissal of misappropriation claim and denying trade secret protection to plaintiff's software's "data-entry screens" and holding that "details that ordinary users of the software could observe without reverse engineering" were not eligible for trade secret protection). As a result, what GS calls trade secrets simply are not trade secrets as a matter of law. *See, e.g.*, *Advantor Sys. Corp. v. DRS Tech. Servs., Inc.*, 678 F. App'x 839, 854 (11th Cir. 2017) (stating that "[d]efinitionally," publicly available information is not a trade secret); *My Mavens, LLC v. Grubhub, Inc.*, 2023 WL 5237519, at *20 (S.D.N.Y. Aug. 14, 2023) (rejecting argument that filtering function on a restaurant ordering website was a trade secret); *ARP Wave, LLC v. Salpeter*, 2021 WL 168501, at *6 n.13 (D. Minn. Jan. 19, 2021) (granting, in part, defendant's motion for summary judgment and criticizing plaintiffs for "fail[ing] to explain how a display or control could possibly be a trade secret when it is exposed to the public").

In addition, the vast majority of the "trade secrets" are disclosed in GS's U.S. Patent Nos. 9,741,050 and 10,726,436, patents issuing from an application *published over a decade ago*. *See* Reddy Decl. Ex. C (chart comparing alleged trade secrets to patent disclosures). For example, "trade secret" Feature #2 is disclosed in Figure 4 in the '050 patent. *See also* Reddy Decl. Ex. D ('050 patent) at Col. 17, ll. 12–45; Col. 20, ll. 56–67. Patent and trade secret protection cannot cover the same information.

11

*See, e.g.*, *Tedder Boat Ramp Sys., Inc. v. Hillsborough Cnty., Fla.*, 54 F. Supp. 2d 1300, 1303 (M.D. Fla. 1999) ("[T]he patenting of a product negates the possibility that the product is also a trade secret."); *see also Blake v. Pro. Coin Grading Serv.*, 898 F. Supp. 2d 365, 380 (D. Mass. 2012) (information loses confidentiality after patent publication).

ii.  GS Cannot Prove That It Took Reasonable Protective Measures

GS also cannot prove that it took reasonable measures to protect its purported trade secrets.  One cannot argue reasonable protective measures were taken with regard to features of its own commercial product that are apparent to anyone who purchases that product and were disclosed in patents.  *See, e.g.*, *Foster v. Pitney Bowes Corp.*, 549 F. App'x 982, 989 (Fed. Cir. 2013) ("[I]deas in [a] published patent application [are] not subject to reasonable efforts to maintain confidentiality.").

GS rests its argument on an unsigned joint user agreement that it claims Zarembka's *employer* signed.  GS does not submit evidence about any other measures taken to protect their purported trade secrets (e.g., that employees signed non-disclosure agreements; that all PayDayPortal accounts at the company were password protected, etc.).  On the contrary, GS's website indicates that the use of PayDayPortal was *not* subject to the joint user agreement.  Rather, the terms and conditions for the PayDayPortal application *include no confidentiality provision*.  Reddy Decl. Ex. E. Without such protections, GS cannot establish that it took reasonable protective measures to protect their purported trade secrets.  *See, e.g., LexJet, LLC v. Big Dog Media Sols., LLC*, 2015 WL 224657, at *2 (M.D. Fla. Jan. 15, 2015).

iii.   GS Cannot Show Use or Disclosure by Toast

Finally, GS cannot prove that Toast improperly used or disclosed the alleged trade secrets.  Toast Tips Manager was independently developed without using any GS trade secret information.  *Supra* 4–5.  This independent development is an absolute defense to trade secret misappropriation claims.  *See, e.g.*, 18 U.S.C. § 1839(6).  GS's sole argument for misappropriation is its false allegation that "Toast obtained [GS's] trade secrets" from a member of the CAB, Zarembka, and that Toast "was aware of, should have been aware of, or was otherwise willfully blind to" Zarembka's provision of information about GS's PayDayPortal program to Toast would violate GS's Joint User Agreement with Zarembka's employer.  SAC ¶¶ 52–55.  This unfounded and false speculation cannot support a preliminary injunction, particularly in the face of contrary sworn testimony.  *See, e.g., MTD Personnel, LLC v. Camoco, LLC*, 2010 WL 5535066, at *3–4 (M.D. Fla. Dec. 8, 2010) (denying preliminary injunction in a trade secret misappropriation case where plaintiff relied on "information and belief" and defendants submitted sworn testimony to the contrary), *adopted in full*, 2014 WL 41880 (M.D. Fla. Jan. 6, 2011).[2]  Moreover, it is illogical to assume that Toast "knew or should have known" that ways to calculate tips, or public-facing features of GS's PayDayPortal program, were confidential trade secrets that were off-limits.  SAC ¶70.

---

[2] GS alleges that Zarembka "admittedly provided information to Toast," citing a YouTube video posted in July 2023.  *Id.* ¶ 52.  But nowhere in the 29-minute video does Zarembka mention trade secrets, GS, Toast Tips Manager, or even tip allocation.  Indeed, this Court recognized that this video was not "prob[ative] as to trade secrets" and did not describe what one "would normally understand to be trade secrets."  Sept. 4, 2024 Hr'g Tr. at 27:8–18.

13

This is particularly true because the terms and conditions of use of GS's website say nothing about confidentiality or trade secrets. Reddy Decl. Ex. E.

### B. GS Has Not Met Its Burden of Proof on Irreparable Harm

"[E]ven if Plaintiffs establish a likelihood of success on the merits, the absence of a substantial likelihood of irreparable injury would, standing alone, make preliminary injunctive relief improper." *Siegel,* 234 F.3d at 1176. Here, GS has not demonstrated any threat of irreparable harm. Evidence of irreparable harm "must be neither remote nor speculative, but actual and imminent." *Swain v. Junior*, 961 F.3d 1276, 1292 (11th Cir. 2020) (quotations and citations omitted).

Indeed, GS does not even identify how it would be irreparably harmed, instead asking the Court to use its imagination. Motion at 11 (stating, "there is little question Plaintiffs are suffering and will continue to suffer irreparable harm if Toast is permitted to continue to post Plaintiffs' confidential trade secrets on Toast's public website for the world to see"). This is not enough. *See, e.g.*, *GTO Access Sys., LLC v. Ghost Controls, LLC*, 2016 WL 4059706, *3 (N.D. Fla. June 6, 2010) (denying preliminary injunction because the motion "lacks identification of any specific harm it has already suffered"), *adopted in full*, 2016 WL 4059676 (M.D. Fla. July 27, 2016). If GS means to argue that it is losing customers to Toast, it has failed to show a nexus between the alleged trade secrets and the loss of customers, an independent basis for finding no irreparable harm. *See, e.g., GPS Indus., LLC v. Lewis*, 691 F. Supp. 2d 1327, 1338 (M.D. Fla. 2010) (denying preliminary injunction and finding no irreparable harm despite loss of customers because plaintiff "fails to show how any actions taken by [defendant]

14

contributed to the client's decision to take its business elsewhere").

Furthermore, "[a]n injury is 'irreparable' only if it cannot be undone through monetary remedies." *Cunningham v. Adams,* 808 F.2d 815, 821 (11th Cir. 1987). "The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." *Sampson v. Murray,* 415 U.S. 61, 90 (1974).  GS seeks an award of "compensatory damages to Plaintiffs for their actual damages for Defendant's misappropriation." SAC at 27.  GS's acknowledgment that its injury is compensable by monetary damages is fatal to its irreparable harm position.  *See, e.g., Wellcare Health Plans, Inc. v. Preitauer*, 2012 WL 1987877, at *7 (M.D. Fla. May 23, 2012) (denying preliminary injunction because "[b]ased on [plaintiff's] own request for relief, any harm suffered by [plaintiff[ can be quantified into an award of monetary damages").

Lastly, GS's delay in seeking an injunction also warrants denial of the Motion for lack of irreparable harm.  *Blue-Grace Logistics LLC v. Fahey*, 340 F.R.D. 460, 467–68 (M.D. Fla. 2022) ("A plaintiff's failure to act speedily undermines his claim that his injuries are irreparable.  Indeed, unexplained delays of a few months negate any claim of irreparable harm on a preliminary injunction motion and many courts typically decline to grant preliminary injunctions in the face of unexplained delays of more than two months." (internal quotations omitted)).  GS's claim that it only learned of Toast's Tips Manager product and public links related to its Tips Manager product on or about July 17, 2024, Motion at 7, is not credible because GS filed the D. Mass. Complaint over Toast's development of Tips Manager in September 2022, and Toast produced

voluminous records about Tips Manager from its website in the D. Mass. litigation more than a year ago. Reddy Decl. ¶ 5.

Even if GS's representation is credited, GS's three-month delay still warrants denial of its Motion. This Court's decision in *Welsh v. Martinez* is instructive. 2022 WL 2356971 (M.D. Fla. June 30, 2022). There, this Court found no irreparable harm where the plaintiff filed a related action two years prior and filed the complaint in the second action three weeks before seeking a TRO. *Id.* at *4. The timeline here is even more delayed. GS sued Toast in Massachusetts two years ago and then waited two months after filing this action to seek an injunction.

### C. The Balance of Harms Weighs in Toast's Favor

GS's speculative, unsubstantiated allusion to non-specified harm does not outweigh the concrete and widespread injury to Toast, its (non-party) customers, and the customers' employees if an injunction were to enter. *See Wang v. P'ships & Unincorporated Assn's Identified on Schedule A*, 2024 WL 3402460, at *4 (M.D. Fla. June 25, 2024) (denying injunctive relief because "[w]hile [plaintiff's] harm is speculative, the defendants and other affected non-parties would suffer great harm").

GS claims the sole harm to Toast is "the inconvenience of losing possession of specific files and information containing Plaintiffs' trade secrets . . . for a limited time." Motion at 11–12. But GS's Motion seeks ████████████████████████. *Id.* at 1, 12–13. The harm this would cause would not only be to Toast but also to third-parties using Toast's products—██████████████████████████

████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

██████████████████████████  ████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

█████████████████████████████████

## D. Granting GS's Motion is Not in the Public Interest

GS offers only a single, conclusory argument that an injunction will serve the public interest because the purpose of the DTSA is to "equip companies with the . . . tools they need to protect their proprietary information . . . [so that U.S. companies will] continue to lead the world in creating new and innovative products, technologies, and services." Motion at 12. This does not explain how an injunction here is in the public interest. Rather, an injunction here *disserves the public interest*, which is in free and fair competition and in avoiding harm to innocent third parties. *See, e.g., Alt. Med. Integration Grp., L.P. v. Langford*, 2014 WL 12572738, at *4 (M.D. Fla. Aug. 1, 2014) (holding that restraining fair competition is "undeniably [] adverse to the public

17

interest"), *adopted in full*, 2014 WL 12575821 (M.D. Fla. Aug. 19, 2014); *see also IT Strategies Grp., Inc. v. Allday Consulting Grp., L.L.C.*, 975 F. Supp. 2d 1267, 1285 (S.D. Fla. 2013) (holding that an injunction is against the public interest because of the weakness of plaintiff's claims and "the public policy of promoting free competition").

## II.  GS Has Not Stated a Claim and the Court Has No Personal Jurisdiction

Because GS's SAC should be dismissed for failure to state a claim for relief under Fed. R. Civ. P. 12(b)(6), the Court should also deny GS's Motion. *Alabama v. U.S. Army Corps of Eng'rs*, 424 F.3d 1117, 1127 (11th Cir. 2005) ("For a traditional injunction to be even theoretically available, a plaintiff must be able to articulate a basis for relief that would withstand scrutiny under Fed. R. Civ. P. 12(b)(6)."). Similarly, because this Court does not have jurisdiction over Toast, it cannot enjoin Toast. *See Posner v. Essex Ins. Co.*, 178 F.3d 12019, 1214 n.6 (11th Cir. 1999) ("A court without personal jurisdiction is powerless to take further action."); *Viral DRM, LLC v. Unknown Counter Notificants*, 688 F. Supp. 3d 1271, 1275 (N.D. Ga. 2023) (holding that "the most basic prerequisite" to injunctive relief "is adequately establishing that the Court may exercise personal jurisdiction over the defendants"). GS cannot satisfy either of the two requirements for establishing personal jurisdiction over Toast, an out-of-state defendant. *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 626 (11th Cir. 1996). It cannot show that Florida's long-arm statute "provides a basis for personal jurisdiction." *Id.* Nor can it show that jurisdiction complies with due process. *Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1250–51 (11th Cir. 2000).

18

## III.    GS's Proposed Injunction Would Violate Rule 65 Because It Is Overbroad

GS's proposed injunction also violates Rule 65(d), which requires that "every injunction state in specific terms and reasonable detail the conduct that it restrains or requires." *Alley v. U.S. Dep't of Health & Hum. Servs.*, 590 F.3d 1195, 1205 (11th Cir. 2009); Fed. R. Civ. P. 65(d)(1); *see also John H. Harland Co*, 711 F.2d at 985 (holding "[a]n injunction which merely forbids a defendant . . . from infringing on plaintiff's . . . trade secrets adds nothing to what the law already requires" (cleaned up)). Here, GS asks for an injunction "to prevent Defendant from further use, dissemination, and publication of Plaintiffs' trade secrets and other confidential information." Motion at 1.[3] In other words, rather than prohibit particular objective actions, GS's proposed injunction is framed solely in terms of "legal conclusions," which is exactly what the Eleventh Circuit has held an injunction *cannot* do. *John H. Harland Co.*, 711 F.2d at 985. The Motion must be denied for this additional reason.

## IV.    A Significant Bond Would Be Required To Enter an Injunction Here

"The court may issue a preliminary injunction . . . only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). Still, GS argues that "a nominal bond, or even a bond of zero, is

---

[3] GS also seeks an order "to discontinue any dissemination of such trade secrets to its customers or others, and to cease its unauthorized access or use of Gratuity's trade secrets, whether in its Toast Tips product or otherwise." Motion at 12–13. This request again merely restates the legal standard, and further highlights that GS's proposed injunction is too vague.

19

appropriate." Motion at 12. This ignores Eleventh Circuit case law and the harm to Toast that an injunction would cause. Courts in this district have waived bond only under certain circumstances, none of which apply here. *See JTH Tax, LLC v. Gilbert*, 2022 WL 1619594, at *17 (M.D. Fla. May 12, 2022), *adopted in full*, 2022 WL 3098407 (M.D. Fla. Aug. 4, 2022). As noted *supra* 16–17, ███████████████████████████████ ███████████████████████████████████ ███████████████████████. *See, e.g.*, *Larweth v. Magellan Health Inc.*, 398 F. Supp. 3d 1281, 1292 (M.D. Fla. 2019) (setting a $10 million bond).

## CONCLUSION

For these reasons, GS's Motion should be denied with prejudice.

QUARLES & BRADY LLP

/s/ Kelli A. Edson, Esq.

Kelli A. Edson, Esq.
Florida Bar No. 179078
Quarles & Brady LLP
101 East Kennedy Boulevard
Suite 3400
Tampa, FL 33602-5195
(813) 387-0300
kelli.edson@quarles.com
Secondary emails:
lauren.gibson@quarles.com
rebecca.wilt@quarles.com
DocketFL@quarles.com

GOODWIN PROCTER LLP

Srikanth K. Reddy, Esq., *Lead Counsel* (*pro hac vice*)
Massachusetts Bar # 669264
Kate E. MacLeman, Esq. (*pro hac vice*)
Massachusetts Bar # 684962
Goodwin Procter LLP
100 Northern Avenue
Boston, MA 02210
(617) 570-1000
SReddy@goodwinlaw.com
KMacLeman@goodwinlaw.com

Andrew Ong, Esq. (*pro hac vice*)
California Bar # 267889
Goodwin Procter LLP
601 Marshall Street
Redwood City, CA 94063
(650) 752-3153
AOng@goodwinlaw.com

*Counsel for Toast, Inc.*

20

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the foregoing was electronically filed on November 20, 2024, with the Clerk of Court using the CM/ECF portal. I also certify that a true and correct copy was served this day on all counsel of record via email and transmission of Notices of Electronic Filing generated by CM/ECF.

_s/ Kelli A. Edson_
Attorney