# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### FORT MYERS DIVISION

GRATUITY SOLUTIONS, LLC, and
GRATUITY, LLC,

     Plaintiffs,

v.                                                                  2:24-cv-737-JLB-NPM

TOAST, INC.,

     Defendant.

---

## ORDER

This misappropriation-of-trade-secrets action arises from business interactions between plaintiffs Gratuity Solutions, LLC and Gratuity, LLC (collectively "Gratuity") on the one hand and defendant Toast, Inc., on the other. Gratuity, as implied by its name, offers a platform for gratuity distribution for the hospitality industry, while Toast sells restaurant-management products and services. In August 2016, Gratuity approached Toast to discuss the possibility of providing its platform to Toast's point-of-sale customers. The parties entered a mutual non-disclosure agreement to foster open communication, such as the exchange of trade secrets and other confidential information.[1] In late 2019, the parties entered into a

---

[1]     Gratuity alleges that upon signing the NDA, Toast obtained access to some of Gratuity's "trade secrets and other confidential information including certain technical and/or financial information related to, for example, certain business plans and strategies; customer lists and preferences; development information and plans including feature sets and feature development, and release plans; applications and/or methodologies for integrating and implementing such

second non-disclosure agreement after Gratuity contacted Toast about acquiring the Gratuity businesses. During these latter negotiations, Gratuity further disclosed trade secrets and confidential information to Toast. In January 2020, Toast declined to move forward with the Gratuity acquisition, and subsequent efforts by Gratuity in September 2021 also failed.

On November 16, 2021, Toast announced its own gratuity management solution, "Toast Tips Manager," which Gratuity believed had many specific features found in its developed products. So on September 19, 2022, Gratuity filed suit against Toast—in the district of Massachusetts—for patent infringement, along with a claim for breach of contract as to both nondisclosure agreements. *Gratuity Solutions, LLC and Gratuity, LLC v. Toast, Inc.*, No. 1:22-cv-11539-PBS (D. Mass. Sept. 19, 2022). The infringement action was stayed on April 24, 2024 (and remains stayed), after the Patent Trial and Appeal Board granted Toast's petition for *inter partes* review, which challenges the validity of a Gratuity patent.

Shortly thereafter, Gratuity filed this action for trade secret misappropriation on August 14, 2024, alleging that Toast obtained trade secrets and other confidential information about Gratuity's "PayDayPortal" program through certain customer advisory board members associated with Toast and that Toast has, in turn, used the

---

features sets and future features; work flows including customer-specific flows, software routines and applications for obtaining and processing customer-specific information; system architectures and interfaces; and associated source code." (Doc. 50, ¶ 18).

information to develop its "Tips Manager" program. Gratuity asserts state and federal claims for misappropriation and claims for civil conspiracy and intentional interference with contracts. (Doc. 50). Gratuity seeks injunctive relief, compensatory and punitive damages, and attorney's fees and costs. *Id.*

We are presented with three motions: (1) Toast's opposed motion to dismiss the second amended complaint or to transfer venue to the District of Massachusetts (Doc. 54); (2) Toast's request for oral argument regarding the same (Doc. 55); and Toast's motion to stay discovery pending resolution of its transfer-or-dismiss motion (Doc. 56). Against this backdrop, the court addresses Toast's request to transfer venue.

Toast argues that this action should be transferred to the district of Massachusetts under the first-to-file rule. When a complaint involving overlapping parties and issues has already been filed in another district court, the "first-to-file" rule creates "a strong presumption" that the second case should be heard by the court with the first-filed matter. *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 (11th Cir. 2005). "The primary purpose of the rule is to conserve judicial resources and avoid conflicting rulings." *Allstate Ins. Co. v. Clohessy*, 9 F. Supp. 2d 1314, 1316 (M.D. Fla. 1998) (citing *Nw. Airlines, Inc. v. Am. Airlines, Inc.*, 989 F.2d 1002, 1006 (8th Cir. 1993)).

In determining whether the first-to-file rule applies, courts consider "(1) the chronology of the two actions, (2) the similarity of the parties, and (3) the similarity of the issues." *Marrero v. Laundress, LLC*, No. 2:23-cv-00519-JLB-KCD, 2024 WL 478370, *2 (M.D. Fla. Jan. 26, 2024) (citation omitted). Where the rule applies, "the party objecting to jurisdiction in the first-filed forum carr[ies] the burden of proving "compelling circumstances" to warrant an exception to the first-filed rule." *Women's Choice Pharms., LLC v. Rook Pharms., Inc.*, No. 16-cv-62074, 2016 WL 6600438, *2 (S.D. Fla. Nov. 8, 2016) (quoting *Manuel*, 430 F.3d at 1135). Compelling circumstances include bad-faith negotiations, anticipatory litigation, and forum shopping. *See Belacon Pallet Servs., LLC v. Amerifreight, Inc.*, No. 15-cv-191, 2016 WL 8999936, *4 (N.D. Fla. Mar. 26, 2016).

The first two elements of the rule—the chronology of the actions and the similarity of the parties—are quickly dispensed with. The Massachusetts action was filed in September 2022, almost two years before this one. And the parties aren't just similar; they are identical. Thus, the key issue is whether the two actions are sufficiently similar.

The first-to-file rule does not require that the complaints be "mirror-images" of each other; instead, "[w]hat is required is a similarity or an overlapping in subject matter." *Rudolph and Me, Inc. v. Ornament Cent., LLC*, No. 8:11-cv-670-T-33EAJ, 2011 WL 3919711, *3 (M.D. Fla. Sept. 7, 2011) (citing *Manuel*, 430 4 F.3d at 1135);

*see also Strother v. Hylas Yachts, Inc.*, No. 12-80283-CV, 2012 WL 4531357, *2 (S.D. Fla. Oct. 1, 2012) (explaining that "[a]ll that need be present is that the two actions involve closely related questions or common subject matter …. The cases need not be identical to be duplicative") (citation omitted).

Looking past the legal dressing, it is apparent from the complaints that there is indeed similarity and overlap. *See Peterson v. Aaron's*, No: 1:14-cv-1919-TWT, 2015 WL 224750, *3 (N.D. Ga. Jan. 15, 2015) ("[W]hether cases are similar is a question of substance rather than form … [a]s long as the underlying facts are the same … the fact that the two complaints allege violations of different … laws is not enough to render them dissimilar for purposes of the first-to-file analysis." (citation omitted)). At the heart of each case is Toast's Tips Manager. While the Massachusetts action alleges patent infringement and this action alleges misappropriation of trade secrets, at bottom, the issue to be resolved in each case is whether Toast unlawfully used Gratuity's proprietary information or invention to develop its Tips Manager. (Mass. Comp. ¶ 80; Doc. 50 ¶ 29).

Despite the overlap, Gratuity argues that its trade-secret claims are factually distinct from its patent-infringement claims because Toast allegedly obtained Gratuity's trade secrets about its PayDayPortal through members of Toast's Customer Advisory Board. But the means by, or conduit through which, the information was obtained does not change the ultimate issue to be decided—whether

Gratuity's intellectual property was used to create the Toast Tips Manager program. Furthermore, answering this question also involves the non-disclosure agreements (and any breach thereof), as Gratuity alleges in each action that upon signing the non-disclosure agreements Gratuity disclosed not only its patents (and pending applications), but also trade secrets, applications and methodologies for integrating feature sets, and software applications. (Mass. Comp. ¶ 32; Doc. 50 ¶ 20). There will also be some redundancy in discovery. As Gratuity conceded on December 16, 2024, during the Rule 16 conference, written and deposition discovery will overlap.

Finally, Gratuity offers no compelling circumstances to overcome the strong presumption of the first-to-file rule. Since Gratuity initiated the patent suit in Massachusetts, Toast's request to transfer this action there is not forum shopping. For the same reason, Gratuity cannot convincingly argue that litigating this action in Massachusetts would be unduly burdensome.

Accordingly, Toast's opposed motion to dismiss the second amended complaint or to transfer venue to the District of Massachusetts (Doc. 54) is **GRANTED** as to its request to transfer venue and otherwise **DEFFERED** for resolution by the transferee court. Toast's requests for oral argument (Doc. 55) and to stay discovery (Doc. 56) are **DENIED as moot**.

If no objections are filed within 14 days of this order, which is the time allotted under Civil Rule 72(a), the clerk is directed to transfer this action to the District of

Massachusetts and to close the case. If any objections are timely filed, the clerk is

directed to withhold the transfer until so ordered by the district judge.[2]

**ORDERED** on February 28, 2025

NICHOLAS P. MIZELL

United States Magistrate Judge

---

[2]    Generally, parties who timely object to a magistrate judge's action are entitled to clear-error review. *See* 28 U.S.C. § 636(b)(1)(A); *see also* Fed. R. Civ. P. 72 advisory committee notes (explaining that Rule 72(a) objections correspond to matters referred under § 636(b)(1)(A), and Rule 72(b) objections correspond to matters referred under § 636(b)(1)(B)); *Adkins v. Mid-Am. Growers, Inc.*, 143 F.R.D. 171, 176 (N.D. Ill. 1992) ("The terms 'dispositive' or 'nondispositive' in Rule 72 do not create categories separate from the statute which Rule 72 implements."). There are eight exceptions; and to view the list as merely illustrative is to leave it to the courts to rewrite the statute and create a patchwork of inconsistent regimes throughout the country. *See* 28 U.S.C. § 636(b)(1)(A); *Wachovia Bank, N.A. v. Deutsche Bank Tr. Co. Americas*, 397 F. Supp. 2d 698, 701 (W.D.N.C. 2005) ("[T]he language of § 636(b)(1)(A) is exceedingly clear that a magistrate judge may 'hear and determine any pretrial matter pending before the court, except' a very specific list of eight matters. Congress would be hard-pressed to use language more clearly indicating its intent to create an exhaustive list than 'any…except.'").

    A transfer-of-venue motion is not among the eight exceptions. Thus, a "Magistrate Judge is empowered to issue the transfer order, which is non-dispositive …." *Bartko v. Wheeler*, No. 1:13-CV-1006, 2014 WL 29441, *1 n.1 (M.D.N.C. Jan. 3, 2014), *aff'd*, 589 F. App'x 181 (4th Cir. 2015) (collecting cases). Indeed, by only excepting Rule 12(b)(6) motions and not all Rule 12(b) motions, the federal-magistrate-judges statute (28 U.S.C. § 636) provides that magistrate judges may dispose of jurisdictional and venue motions—Rules 12(b)(1) through (3)—by order; and a transfer-of-venue motion likewise concerns forum-selection issues and not the merits of a claim or defense.